(C. D. 1922)

DOUBLE BEND MFG. CO. *v.* UNITED STATES

## United States Customs Court, Third Division

*James G. McGoldrick* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Dorothy C. Bennett* and *William J. Vitale*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The protest herein relates to a shipment of various items of merchandise, designated on the entry as "U. S. Army Scrap of American Origin—Returned American Goods" and entered as free of duty under paragraph 1615 of the Tariff Act of 1930. The item described as "magnesium plates" was assessed with duty by the collector at 20 cents per pound and 10 per centum ad valorem under paragraph 375 of said tariff act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and that described as "steel plates" at one-eighth of 1 cent per pound under paragraph 304 of said tariff act, as modified. It is claimed, in the original protest, that scrap materials, especially of American origin, returned to the United States, are duty free. In an amendment to the protest, it is claimed that the merchandise is nondutiable, by reason of Public Law 869, 81st Congress, 2d session, 64 Stat. 1093. The stipulation, upon which this case has been submitted, confines the issue to the merchandise described as "magnesium plates" and abandons the protest as to all other items.

The pertinent statutory provisions are as follows:

Tariff Act of 1930, as amended by the Customs Administrative Act of 1938:

PAR. 1615 (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means. [Free.]

Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802:

PAR. 375. Magnesium alloys, powder, sheets, ribbons, tubing, wire, and all other articles, wares, or manufactures of magnesium, not specially provided for, 20¢ per lb. on the metallic magnesium content and 10% ad val.

Public Law 869, 81st Congress, 2d session, 64 Stat. 1093, amending 56 Stat. 171, to read as follows:

SEC. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap," as used in this Act, shall mean all ferrous and non-ferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

\*     \*     \*     \*     \*     \*     \*

Sec. 2.   The amendment made by this Act shall be effective as to merchandise entered, or withdrawn from warehouse, for consumption on or after the day following the date of the enactment of this Act and before the close of June 30, 1951.   It shall also be effective as to merchandise entered, or withdrawn from warehouse, for consumption before the period specified where the liquidation of the entry or withdrawal covering the merchandise, or the exaction or decision relating to the rate of duty applicable to the merchandise, has not become final by reason of section 514, Tariff Act of 1930.

This case has been submitted upon the official papers and a stipulation of fact, to which various documents have been attached as exhibits.   From this record, the following facts appear:

On August 8, 1949, the Department of the Army issued Invitation to Bid No. DA (s) 91–503–EUC–3 on the sale of certain salvage or scrap property located in Europe.   The general provisions or conditions to which bids were subject included the following:

15.   PURCHASER'S SCRAP WARRANTY.   With respect to all scrap covered by this contract, the purchaser represents and warrants to the US Government that such property was offered as scrap, purchased by him as scrap and will be sold, shipped and used only as scrap either in its existing condition or after further preparation.

\*     \*     \*     \*     \*     \*     \*

23.   PURCHASER'S USE WARRANTY.   With respect to the items of non-ferrous metal scrap, items numbered 11 and 12 on page No. 10 of the SCHEDULE, covered by this contract; the purchaser *REPRESENTS AND WARRANTS THAT SAID SCRAP WILL BE SHIPPED TO THE UNITED STATES AND THAT SUCH SCRAP WILL BE ACTUALLY USED IN THE UNITED STATES ECONOMY.*

Among the items listed for sale under the schedule, headed "NON-FERROUS SCRAP," was item No. 12, described as "Magnesium, ingots, plates and angles" in a quantity of 23,000 pounds, located at Rothenbach Ordnance Scrap Collecting Point.

Bernard Price, doing business as Double Bend Mfg. Co., the plaintiff herein, submitted a bid and was awarded certain articles, including item No. 12.   In January 1950, he inspected the awarded scrap materials at Rothenbach.   These materials included the item described as "magnesium, ingots, plates and angles," which, according to Mr. Price, consisted of huge magnesium doorways, probably previous airplane hangars, broken doors, and parts, which items were bent, split, broken, and disformed.   In his affidavit, attached to the stipulation herein, he states, "* * * I knew that this material is scrap material, had to be re-melted and could not have any other usable purpose in that present form."   He stated, further, that the Army personnel at Rothenbach represented to him that all the scrap materials in that depot were of United States origin which they would

prepare for overseas shipment in such reduced volume as to have minimum freight charges. The affiant added:

> Specifically, the "non-ferrous metal scrap" with U. S. Army nomenclature "Magnesium, Ingots, Plates and Angles" must have been cut, sheared and re-melted in forms of local, i. e. German origin, whereby it was physically impossible to deface the German marking in these used forms, because, upon arrival of these magnesium scraps I could convince myself that the U. S. army personnel in Rothenbach, Germany, had done their best to reduce the shipping volume of these huge airplane hangar parts or similar previous use, to a minimum. Although the U. S. Army personnel has given a nomenclature of "ingots, plates and angles", these magnesium scrap material had only one and only use, namely the re-melting.

It took the Army personnel at Rothenbach several weeks to prepare the material for shipment, but, in a letter, dated February 21, 1950, it was stated that tentative plans called for shipment to Hamburg in sufficient time for loading aboard the "Havorn."

On March 31, 1950, the material was shipped by the Scrap Control Offices to Schenker & Co. of Hamburg, importer's agent. The Army Shipping Document covers "Iron, oxide (rushed iron ore)" and "Magnesium, ingots plates & angles," 23,000 pounds. It contains the following:

> NOTE: "US ARMY SCRAP OF AMERICAN ORIGIN FOR RESHIPMENT TO USA."

On April 5, 1950, the materials awarded the importer, as a result of its bid, including the magnesium ingots, plates, and angles, were shipped from Hamburg on board the "Havorn," consigned to Double Bend Mfg. Co. at New York. Said materials were imported into the United States on April 16, 1950, and are covered by the entry before us. All the material, including the magnesium plates, was insured for ocean transportation as "various scrap materials."

Customs Form 3311, Affidavit For Free Entry of Returned American Products, was executed by the importer and filed with the entry. Said affidavit states that the merchandise was, to the best knowledge and belief of the affiant, of United States manufacture and was shipped from the United States by the United States Army to the United States Army and was returned to Double Bend Mfg. Co., without having been advanced in value or improved in condition and that no drawback had been paid thereon.

Customs Form 129, Invoice of Returned American Goods and Declaration of Foreign Exporter, was subsequently filed with the collector. In it, the foreign shipper states that the merchandise was, to the best of his knowledge and belief, of United States origin; that it was exported from the United States during the war and returned, without having been advanced in value or improved in condition. The merchandise is described as "U. S. Army scrap of American origin for reshipment to U. S. A."

The *pro forma* invoice lists the merchandise in question as magnesium plates under a general heading, "U. S. ARMY SCRAP OF AMERICAN

Origin Reshipped to U.S.A." On this invoice, the examiner wrote "No evidence as to origin" and "magnesium Plates * * * not believed to be scrap." He also noted that the magnesium plates were marked "Bohler FBD." Under this notation, there appeared the words "Believed of Foreign origin," which have been crossed out.

Subsequent to entry, the merchandise in question was sold to Bond Metal Surplus Co. for resale. On May 6, 1950, and May 12, 1950, the New Jersey Metals Co. purchased magnesium metal scrap from the Bond Metal Surplus Co. in three lots, totalling 21,800 pounds, which material was resold to the Federated Metals Division, American Smelting and Refining Co. According to a letter of the general manager of the latter, 7,641 pounds of one lot and 12,803 pounds of another lot were remelted to produce magnesium ingots or anodes.

The record includes a copy of a letter from Lieutenant Colonel Charles A. Sanford, Chief, Surplus, Salvage & Scrap Disposal Section, referring to a letter from the importer, designating Schenker & Co. its agent "to receive the scrap material sold on Contract Number DA (s) 91–503–EUC–3."

A copy of a letter from Major Daniel T. Delaney, Property Disposal Division, United States Army, states:

Reference is made to your letter, dated 20 May 1955 concerning property delivered under Invitation to Bid No. DA (s) 91–503–EUC–7.

It is to be noted that the issue date of this invitation was 14 February 1950 with opening date of 21 March 1950.

All papers pertaining to above mentioned invitation to bid have been disposed of in accordance with existing regulations. It is the opinion of this office, however, that the material in question was of US origin and had been shipped to the European Theater by the US Armed Forces. It is further believed that at the time of the shipment to the United States the property in question was packed in available containers. Therefore, the markings "Bohler—FBD" had no bearing on the shipment or the contents.

Another letter, from Colonel Edward L. Burchell, Chief, Stock Management Branch, Storage and Distribution Division, United States Army, contains the following:

Invitation to Bid Number DA (s) 91–503–EVC–7 was issued 14 February 1950 and opened 21 March 1950 by the Quartermaster Division, Field Service Branch, Surplus, Salvage, and Scrap Disposal Section, U. S. Army, Germany. Item number 12 was described as magnesium, ingots, plates and angles, in the amount of 23,000 pounds. Contract Number DA (s) 91–503–EVC–7, covering this item was awarded the Double Bend Manufacturing Co., 154 Nassau Street, New York, New York.

The material included in this lot of magnesium scrap was of U. S. origin and was shipped to the European theater by the United States Armed Forces during World War II.

It is to be noted that there is some discrepancy between the last two letters and other documents in the record. Photostatic copies of the invitation to bid give the number as DA (s) 91–503–EUC–*3*

and the date of issue as August 8, 1949, the bids to be opened October 4, 1949. The number of the contract is given as DA (s) 503–EUC–7. The Government's acceptance of the importer's bid is dated October 7, 1949. While the above letters give incorrect dates for the invitation to bid, other statements indicate that the respective writers intended to refer to the instant merchandise.

In addition, the stipulation upon which this case has been submitted contains the following statement:

33. The Collector of Customs at New York is satisfied by reason of all the facts set forth herein and that merchandise herein was exported by the Armed Services during World War II under U. S. military security regulations and that no drawback of duties or refund or remission of taxes was allowed when the original articles were exported from the United States, therefore, the requirement is waived for the filing of a certificate, Customs Form 4467, of the Collector of Customs, as provided for under subsection (a) (3) of Section 10.1 of said Customs Regulations.

The record herein, which shows considerable care and effort to present to the court all the evidence available in connection with this importation, establishes that the merchandise described as "magnesium plates" or as "magnesium, ingots, plates and angles" was of American origin, returned without having been advanced in value or improved in condition while abroad, on which no drawback has been paid, and that the customs regulations as to American goods returned have been complied with or compliance waived by the collector. We hold, therefore, that this merchandise is entitled to free entry under paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as American goods returned. It appears, further, that this material is nonferrous metal scrap and is also entitled to free entry under Public Law 869, 81st Congress, 2d session, 64 Stat. 1093. To that extent, the protest is sustained, and the collector will be directed to reliquidate the entry accordingly. As to all other items and in all other respects, the protest is overruled. Judgment will be rendered in accordance with this decision.